No. 181372 and No. 181608, Beth Zell et al. v. Barry Ricci et al. Good morning. Oh, I'm sorry, miss. Good morning. Good morning, your honors. Judge Thompson, Judge Turia, Judge Calliota. My name is Paige Monroe-Deloto, and I represent the appellant, Kelsey Zell, as well as the cross appellees, Miss Zell and her parents, Mark and Beth Zell. Judge Turia, may I reserve three minutes for rebuttal? You may. Thank you, your honor. Your honors, this case at the district court level, the defendants were extremely successful at reframing this as a frivolous case about a one-day in-school suspension. This case was not a frivolous case. It was about a very serious brain injury that occurred, in part due to the negligence of the defendant's school district, but also it's about a permanent record of discipline on my client's record in the form of a suspension for fighting, which she has to report to every educational institution that asks, which these days is every single one,  But this case is also about the wildly unjust process that the school district used, specifically during the school committee hearing, which violated or deviated from normal protocols to ensure the discipline remained on Miss Zell's record. And we believe this was done for the non-legitimate reason to reduce liability for the underlying brain injury claim. Your honors, Rive and the counsel are defendants in this matter, because Miss Zell went to Rive and the counsel in the hopes that they would see this wildly unjust process used by the defendants in the school committee hearing, and they would overturn the discipline and make justice. But they not only wouldn't consider reducing it from a suspension to an unreportable detention, they upheld the discipline with reasoning that was insufficient under Goldberg v. Kelly for due process standard of a state agency during the evidentiary hearing. Your honors, it's our pleasure to be back. So Goldberg itself, following the quote that the decision-maker should state the reasons for his determination and indicate the evidence he has relied on, goes on to say, though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law. So how is what happened here contrary to the Goldberg holding? Because they certainly, she was provided with a hearing. She was provided with an opportunity to present and confront witnesses. She was provided with a decision. She was given several appellate processes. I mean, Goldberg doesn't guarantee you the right to succeed on appeal. It just gives you the right to be heard and treated fairly. Yes, your honor, we do not contest that she did have notice and opportunity to be heard. What we contest is that based on two days of evidence and especially an expert witness who was a 20-year police detective, he testified that this was an unprovoked assault unquestionably, and so she did not instigate a fight whatsoever. So the bride decision disregards, doesn't even mention any of the plaintiff's evidence. In fact, it doesn't mention the expert at all, which that was probably the most persuasive opinion or testimony. There's a bunch of other problems which are in the brief with the bride decision, but then on the appellate decision, five errors were alleged. Two of the most important errors was two errors of law that should have been reviewed de novo, and one was that the court or the appellate review counsel did not define the word instigate against their own precedent before finding Mrs. L. instigate a fight, and they also found that only general intent was required to instigate a fight, not specific intent, which means that everybody spraying silly string that day instigated a fight. In effect, then this counsel in their written decision provided zero reasoning other than repeating a statement by Rye that said that disciplinary codes are not criminal codes, but that in no way explains how they didn't have to define instigate before finding she instigated it, why they didn't follow precedent, which they didn't in using the dictionary to define the word. Wasn't there an allegation that she called her a derogatory name? I mean, I'm not suggesting that name calling should result in physicality, but there are such things as fighting words which could be an instigation. Yes, Your Honor. There was an allegation that the first time it ever came up in the year or so between the event and the Rye hearing was the former best friend claimed at that hearing, never claimed it before, that my client said the derogatory word before she sprayed the silly string in the air. The evidence from the expert, had it been weighed, which it should have been, said he analyzed the video. Nobody around him moved or around Ms. Zell moved at all or reacted in any way that she could have said or yelled a derogatory term. He analyzed it in detail and gave vast explanation as to how she couldn't have said that. You seem to be saying that we can throw out a state administrative proceeding if the tribunal in the state didn't mention each of the arguments and each of the evidence that the losing side put forward at the proceeding. No, Your Honor. Okay, if you're not then, then why are you complaining that the decision didn't mention the expert? Your Honor, under the arbitrary and capricious standard area of law, which as my brief explained, it's not clear if that's what does apply to the sufficiency of the decision, but there is a requirement that all of the data and evidence is examined. There is a requirement that the explanation can't run counter to the evidence. There is a requirement that there is reasoning. There is zero reasoning in the counsel decision. And now you're back saying they have to have, that we can throw out a state administrative proceeding if we judge they don't have enough reasoning in it or they don't address enough of the evidence. Your Honor, I think the bar would be pretty high for this. But the site of case that we've done that, I mean we don't even do that in criminal appeals where the state court, we presume the state court heard and decided an issue. I think I'm understanding your question now, Judge Palletta, better. We're not saying throw out the decision. The discipline can stay on her record. We're saying that we want a finding that this was a due process violation. But you just said at the beginning that one of the key things you're asking for in this case is to remove the discipline from her record. No, Your Honor. What I said was that when we went to ride, the goal was to have them review the discipline and one of the options was to stop all litigation and she would accept an unjust detention on her record, which is not reportable. That's all I said with respect to that. At this point, the case is really about the brain injury, the negligence claims that we feel were wrongly dismissed because we pleaded cognition. So why are we talking about the evidence at the administrative proceeding and the expert and the fact they didn't mention it and the fact that one witness showed something that was different from the video? I apologize, Your Honor. I was just trying to respond to Judge Thompson's question. If you really want to talk about the negligence claim, then I think you have to address how the Coverdale Act applies. Yes, Your Honor. Would you like me to continue and do that or would you like me to sit down? I'd like the judge to weigh it. Let me answer the question, yes. Yes, Your Honor. Your Honor, we believe the Coverdale Act is not applicable because reading the act appears to focus on narrow circumstances involving negligence related to discipline. All claims of negligence are for the unsupervised hallway and the failure to evaluate the concussion. Neither one of those acts of negligence has anything to do with discipline. Well, Coverdale isn't limited to discipline. It includes any actions in furtherance of efforts to maintain order. And as I understood your basic negligence claim is that the school's efforts to maintain order at school did not go far enough. They should have done more. Given what they knew about the mayhem on Spirit Day and the other thing, they should have had more supervision in the corridors of the school to prevent this sort of stuff. Your Honor, that's only one of the allegations of negligence. The other one has absolutely nothing to do with maintaining order. And we would argue that they should have supervised the hallway not necessarily to maintain order but to protect students, which I think is a little bit different. Additionally, there's other reasons why the Coverdale Act doesn't apply. It requires that there's exceptions, and one of the main exceptions is gross negligence. We're at the pleading stage here, and we weren't even allowed to amend. At the pleading stage, if we plead gross negligence, I don't believe that an affirmative defense is clearly on the face of the complaint, Your Honor. Thank you, Your Honor. We'll rest on our brief until rebuttal. Thank you. Thank you. Mr. Reynolds, good morning. Good morning, Judge Torea, Judge Thompson, Judge Cayada. My name is Mark Reynolds. I'm representing the Chariho Regional School District, its superintendent, Barry Ritchie, the principal of Chariho High School, Laurie Weber, the dean, Ryan Bridgham, and the chair of the school committee at the time of this incident, Craig Luzon. When you review this matter, it's apparent that the Zells took a shotgun approach to drafting their complaint in this case. They sued as many people and as many entities as possible on multiple theories, and they lumped many defendants together on many of those counts. And as a result, we have a complaint that, in addition to not meeting the standards of Rule 12b-6, also includes frivolous allegations and claims that should have resulted in sanctions being imposed on the plaintiffs. Look, there's a lot in that complaint that's hard to accept, but there is a negligence claim. There's a claim that each year there's this spirit day that the school knew that mayhem and aggression were characteristics of it, and they provided insufficient supervision in the hallways, and had there been sufficient supervision, then the assault would not have taken place. That sounds to me like a classic negligence claim, and then there's also a claim that when she reported the injury, no one, including the nurse, thought or sent her to get any medical attention at all until the father showed up hours later. Why aren't those negligence claims perfectly standing ordinary negligence claims against the school? What's missing from the negligence claim and what's required by the plausibility standard is factual content stating that states a claim, a plausible claim for relief for negligence. Well, what's implausible about it? If a school knows that they're going to sanction mayhem in their corridors, that they should put out some teachers to control the mayhem. But there's no doubt they used the word mayhem without describing what specifically happened on those prior occasions that constituted mayhem that should have given notice to the school department to do something different. Well, they have kids running through the hallways spraying each other with Silly String, and you put a bunch of adolescents in doing that, I would think a jury might think it's probably a pretty good idea to have a teacher there watching it. Well, the interesting thing about the complaint, when it referenced the Silly String, this is paragraph 45 of the second amended complaint, it says one of the things being students spraying copious amounts of Silly String outside and inside the school hallway. Then paragraph 46 says this normally resulted in innocent fun and laughter by classmates. But it also says it included aggression. Possible aggression. And what I'm saying, Judge, is you can't just make a general statement. There was aggression. When was there aggression? What kind of aggression? The only specific allegation in the complaint... Well, let me ask you this. In Rhode Island, can't you just say I was driving my car on North Street. You were operating in the opposite direction. You were operating your vehicle negligently and caused an impact that damaged me. That's enough to state a negligence claim under most states in this country. Well, I don't know that that would meet the plausibility standard under the federal standard. For a car accident, you think you need more? It's more involved in an incident than an automobile accident. Especially where they are suing four different individuals for negligence. How were they negligent? What duty did they have? What facts? What prior incidents? And I think there needs to be some degree of specificity. There's no specificity in this complaint concerning what this prior mayhem was. They just put the word in the complaint that I think there needs to be more in order to adequately state a plausible claim for relief. This is an incident that took place in about 10 seconds in the hallway as the students were coming in into the building that day. The other aspect of the negligence claim is the delayed evaluation. And the main issue with the delayed evaluation is the complaint fails to include allegations that that negligence, the delayed evaluation, caused some injury to Ms. Zell. The complaint states that she was injured as a result of the incident with the other student, that she sustained a concussion. But the complaint does not allege what injury resulted from this delayed evaluation by the school nurse. They allege that had it been done sooner, a CT scan would have been an available diagnostic tool. I don't think that's an injury, Your Honor, respectfully. I don't think that's it. To say that they couldn't do a CT scan, that's not an injury. Do you agree the Coverdale Act would not, if we did not agree with you on the causation issue, and I'm not saying we would, wouldn't, but if we did, to agree the Coverdale Act would not apply to that negligence claim because it doesn't refer to the maintenance of control or discipline in the school. I agree. That would be a far more difficult argument for me to make. It doesn't relate to, as you say, control of the students. It would be much more difficult. But again, the causation piece there, that's what's key with respect to the delayed evaluation piece of this. If I could go back to the sanctions issue, I just want to touch on a couple of what I think are very clear examples of the allegations in the complaint that were subject to sanctions. The first of all is the including count three for a constitutional conspiracy under section 1985, a claim that requires that the plaintiffs show the defendants conspired against her because of her membership in a class that's either defined by race or some other invidious discriminatory animus. Don't we have an abuse of discretion standard on review of the sanctions issue? You do, Your Honor. You do. Are you pointing us towards any precedent where a trial court decided, no, I'm not going to sanction it, and the circuit court said you had to? I have not, Your Honor. So you'd like us in this case to be the first circuit court to do that? It could be, Your Honor. I'm not saying it's not out there. I haven't done that. I haven't done that research to see whether there is another case out there where there has been a finding of an abuse of discretion. But I think in light of this court's ruling in Andre versus Jamestown Housing Authority, where the court found a complaint that failed to include an allegation that the plaintiff was a member of a class that was defined by race or other invidious discriminatory animus, this court found that to be frivolous. A reasonably competent attorney researching to draft this complaint should not have included that count in this complaint. Another brief example is the fact that we have a suit against the chair of the school committee. The only factual allegation with respect to the chair of the school committee is that he was a member of the school committee that heard the appeal and, as the chair, signed the decision of the committee. Yet he's included in the claims for procedural due process with respect to the initial discipline to Ms. Zell. He's included in the negligence count for supervision of the hallway. He's included in a count for intentional infliction of emotional distress. That kind of shotgun approach just isn't permitted and we feel should have resulted in sanctions. And we would request that the court remand the case to Judge Smith to determine an appropriate sanction. So you're on oath. In other words, over the past two years, the Zells have submitted mountains of paper to the district court, to this court, and yet they still have failed to provide the specific factual content that they need to provide in order to state plausible claims for relief on the remaining counts that are before the court. And as Judge Smith observed in his decision, this teen drama masquerading as a federal lawsuit needs to come to an end. And therefore, we would respectfully request that this court affirm the dismissal of the plaintiff's complaint by Judge Smith. Thank you. Thank you. Ms. Bonaroff? Thank you, Your Honors. I just want to clarify a couple quick points. One point is that we haven't addressed the equal protection claim and we believe there's a strong class of one claim present because of the clear malice that was present during the school committee hearing and the decisions that the school district employees made. Additionally, with respect to the sanctions. This malice situation, can you elaborate a little bit? Yes, Your Honor. During the school committee hearing, it was very clear that there was intentional misrepresentations made about evidence that were allowed to be made. For example, the attorney for the school district said something to the effect of which we have at least three witnesses to so far and we haven't done discovery. A statement about a cell phone is a girl's best friend or a teenage girl's most prized possession and wouldn't be used as a weapon. But every person there, Weber, Ritchie, Bridgham, and they all knew that a cell phone was used to hit Ms. Bell in the back of the head that day in the hallway because not only was it admitted by her, by Ms. McKinley, it was on video. So that's one example. There was a second video that showed that Ms. McKinley, her modus operandi, was to hit people in the head with cell phones and that was not represented. Also, the school district used a two-minute video which took all of the context out of the other students spraying silly string and nothing happening and limited it from a seven-minute video to a two-minute video. There was a number of other things that I could go into that indicated that there was an intentional act which could only be done from a motivation of malice or intent to injure as a class of one claim allows. Plus, these are also deviations from protocol which are certainly not discretionary in nature. Decisions to modify a school committee hearing to what we allege is misrepresent evidence and withhold evidence can't possibly ever be a discretionary act. Therefore, we believe we've stated a claim for equal protection and in the complaint, we pleaded similarly situated high school students or Cheriho high school students. We didn't specifically clarify for each event because originally we claimed equal protection violations for the initial discipline, the superintendent appeal and the school committee appeal. Was your client at the hearings? My client did not speak to Mr. Ritchie before. He rendered the decision without speaking to her. She was at the school committee hearing. I thought you said you conceded there was notice and opportunity to be heard. Yes, Your Honor, that's the due process claim and I'm talking about the equal protection claim. Well, what was the opportunity to be heard? We don't contest she had an opportunity to be heard except for with the superintendent appeal. She wasn't heard. That was the one place she didn't have an opportunity to be heard. But we dropped most of those, Your Honor. We tried to limit the claims because of the contentiousness of this lawsuit and also the sanctions thing and all that. Let me put it this way. Did your clients ever have an opportunity to present their version of what happened? No, not fully, Your Honor. I didn't say fully. Did they have any opportunity? Yes, Your Honor. And what was their opportunity? The best opportunity was during the ride hearing itself. Was any attempt by them to submit evidence or argument refused? Yes, that was part of the appeal errors, Your Honor. And what did the Rhode Island court say? It never got to the Rhode Island court. The counsel reviewed it. We appealed it to family court. There was two competing statutes, so we had two family court appeals. Then we tried to just blend it into the federal complaint because it was just getting way too messy, and then the whole complaint was dismissed. So that's where we stand, Your Honor. Thank you.